STATE OF CONNECTICUT *v.* FINLEY WILLIAMS
(8225)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued June 11—decision released August 13, 1991

*Erskine D. McIntosh,* assistant public defender, with whom, on the brief, were *William Holden,* public defender, and *Christopher McKeon,* certified legal intern, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2) applicable to acts that do not constitute murder because of a defendant's extreme emotional disturbance. The defendant raises several challenges to various instructions given to the jury by the trial court. We affirm the judgment of the trial court.

The jury could have reasonably found certain facts. On the evening of February 15, 1988, the defendant and the victim were occupying the same apartment. That evening, the defendant consumed alcohol and, throughout the evening, the defendant and the victim had several arguments. These arguments led to two separate physical altercations before the defendant and victim were separated by others occupying the apartment. Later, the defendant and the victim were again involved in a fight in the room occupied by the victim. Early in the morning of February 16, the victim was found dead as a result of numerous blows to the head and body by a blunt instrument.

The defendant first challenges the trial court's instruction concerning circumstantial evidence as violative of his federal and state constitutional rights to a fair trial and to present a defense. The defendant concedes that this claim was not properly preserved at trial but seeks review under the *Evans-Golding* doctrine. *State* v. *Golding,* 213 Conn. 232, 239–40, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Because the jury instruction here is the same as that reviewed by our Supreme Court in *State* v. *Ortiz,* 217 Conn. 648, 665–70, 588 A.2d 127 (1991), and because our review of the record shows that there was no reasonable possibility that the jury was misled by the trial court's instruction, the defendant cannot prevail on this claim. *State* v. *Tinsley,* 24 Conn. App. 685, 689, 591 A.2d 448 (1991); *State* v. *Willis,* 24 Conn. App. 678, 682, 591 A.2d 445 (1991).

The defendant next contends that the trial court improperly instructed the jury with respect to the law on intoxication. The trial court instructed the jury that, if it decided that the defendant was intoxicated at the time of the alleged crime, it must then determine "whether his mind was so obscured that it was incapa-

ble of possessing an intent to commit the acts constitut-
ing the crime of murder. Any intoxication, not merely
a total intoxication, may be considered in determining
whether the defendant possessed the requisite intent."
The defendant argues that this instruction had the
effect of removing from the state the burden of prov-
ing beyond a reasonable doubt that, despite the defend-
ant's intoxication, he had the capacity to and did form
the intent to kill the victim. We disagree.

"A charge to the jury is not to be clinically dissected
nor are portions of the charge to be read in isolation
from the entire instruction. *State* v. *Foreshaw,* 214
Conn. 540, 548, 572 A.2d 1006 (1990). Rather the
charge is to be read as a whole with a view towards
its probable effect in guiding a jury to a correct ver-
dict. . . . The test to be applied to any part of the
charge is whether the charge, when taken as a whole,
presents the case to the jury fairly and accurately, such
that no injustice will be done." (Citations omitted.) *State*
v. *Toczko,* 23 Conn. App. 502, 507, 582 A.2d 769 (1990).
Where as here, the allegedly improper instruction is
of constitutional magnitude, because the defendant is
claiming that the instruction shifted the burden of
proof, we must determine whether it is reasonably pos-
sible that the jury was misled. *State* v. *Grullon,* 212
Conn. 195, 204, 562 A.2d 481 (1989).

Our review of the entire charge that was given to
the jury reveals no reasonable possibility that the jury
was misled. The trial court instructed the jury in the
language of General Statutes § 53a-7,[1] informing the

---

[1] General Statutes § 53a-7 provides: "Intoxication shall not be a defense
to a criminal charge, but in any prosecution for an offense evidence of intox-
ication of the defendant may be offered by the defendant whenever it is
relevant to negate an element of the crime charged, provided when reck-
lessness or criminal negligence is an element of the crime charged, if the
actor, due to self-induced intoxication, is unaware of or disregards or fails

jury that intoxication is not a defense but is relevant to negate the element of intent. Furthermore, the trial court carefully and repeatedly instructed the jury that the burden of proof beyond a reasonable doubt on the element of intent rested with the state; *State* v. *Toczko,* supra; noting that, in order to find the defendant guilty of the specific intent crimes on which the jury was instructed, it "ha[d] to find that he was not in such a state of intoxication as to be unable to form the required specific intent." Under these circumstances, we reject the defendant's claim.

The defendant's third claim is that the trial court's jury instruction on the affirmative defense of extreme emotional disturbance (1) impermissibly directed the jury to find him guilty of manslaughter in the first degree upon a finding of a valid defense of extreme emotional disturbance and (2) precluded from the jury's consideration the lesser included offense of manslaughter in the second degree. We do not agree.

The trial court instructed the jury that "if you also find that the state has proved beyond a reasonable doubt that the defendant intended to cause the death of the decedent, and that he did cause the death of the decedent, but under circumstances which do not constitute murder because he was acting under the influence of extreme emotional disturbance, you must find the defendant guilty of manslaughter in the first degree [in violation of General Statutes § 53a-55 (a) (2)]." The defendant's argument that the instruction "misle[d] the jury to find the defendant guilty of manslaughter in the first degree if he committed the act while under

to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

the influence of an extreme emotional disturbance, regardless of the intent of the defendant," misinterprets the charge as given.

The challenged instruction requires the jury first to decide if the elements of murder have been proven beyond a reasonable doubt. Only after the jury has first found the intent required to convict the defendant of murder does the charge direct the jury to consider the claim of extreme emotional disturbance. The challenged instruction, by its very terms, has not made the defendant's intent irrelevant, but rather has made a finding regarding his intent a necessary prerequisite to a finding of guilt under General Statutes § 53a-55 (a) (2). When §§ 53a-54a[2] and 53a-55 (a) (2)[3] are read together, it is clear that the jury was, in fact, required to return a guilty verdict under § 53a-55 (a) (2) if it found beyond a reasonable doubt that the defendant intended to cause the death of the decedent and did cause the death of the decedent, but under circumstances that do not constitute murder because he was acting under the

[2] General Statutes § 53a-54a provides in pertinent part that in any prosecution for murder "it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53a-55 (a) (2) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

influence of extreme emotional disturbance. *State* v. *Asherman*, 193 Conn. 695, 729–33, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

The defendant's related claim, namely, that the challenged instruction on extreme emotional disturbance precluded jury consideration of the lesser included offense of manslaughter in the second degree, must also fail. As we have noted, the challenged instruction required the jury first to determine whether the elements of murder had been proven before it determined whether the mitigating circumstances of extreme emotional disturbance required a guilty verdict under § 53a-55 (a) (2). The trial court thereafter reviewed all of the other possible verdicts in the order that the jury was to consider them if it did not find the defendant guilty of murder or manslaughter in the first degree by reason of extreme emotional disturbance.

The court appropriately instructed the jury on the lesser included offense of manslaughter in the second degree. The trial court instructed the jury that if it did not find that the state had proved the elements of the murder charge, then the instruction on extreme emotional disturbance was inapplicable to the case, and the jury was required to consider each of the remaining lesser included offenses, including manslaughter in the second degree.

The defendant's next claim is that, in instructing the jury on self-defense, pursuant to General Statutes § 53a-19,[4] the trial court improperly stated that the

[4] General Statutes § 53a-19 (a) provides in pertinent part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes

"reasonable force" to be evaluated by the jury "is the amount of force that would be used by an *average person of ordinary intelligence,* acting under the same circumstances." (Emphasis added.) Evidence adduced at trial showed that the defendant's intelligence was less than average, that the defendant had previously been the victim of a violent attack by an acquaintance, and that the defendant was aware of the victim's propensity for violence. The defendant argues that the court's definition of reasonable physical force impermissibly replaced the subjective-objective standard contemplated by § 53a-19 with a simple objective standard and, therefore, "took the jury too far away from the 'subjective-objective' standard in determining the degree of force."

The defendant has not properly preserved this claim for appellate review, but seeks review under *State* v. *Golding,* supra, and *State* v. *Evans,* supra. His fundamental right to present a defense includes a proper instruction on the elements of self-defense. *State* v. *Gilchrist,* 24 Conn. App. 624, 632–33, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). Although the court's charge to the jury on self-defense contained an incorrect statement of law, we conclude that the improper instruction was harmless beyond a reasonable doubt. *State* v. *Golding,* supra.

The defendant's claim on appeal with regard to the jury instruction on self-defense focuses on only one part of that defense as set forth in § 53a-19. We begin our analysis by reviewing separately the significant parts of a self-defense claim in light of the defendant's claim of instructional error. Basically, the statute provides that a person may be justified in "using reasonable physical force," and if there is justification within the

that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

terms of the statute, "he may use such degree of force which reasonably believes to be necessary for such purpose . . . ."

In evaluating a claim of self-defense, a trier of fact must first examine the danger that a defendant claims he faced. It is clear that here "[t]he statute focuses on the [defendant's] claiming self-defense. It focuses on what *he* reasonably believes under the circumstances . . . ." (Emphasis in original.) *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982).

Our case law interpreting General Statutes § 53a-19 requires, as well, that the " 'test for the *degree of force* in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. . . . [H]owever . . . the defendant's belief ultimately must be found to be reasonable.' " (Emphasis in original.) *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990), quoting *State* v. *DeJesus,* 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984). The starting point of the jury's inquiry into whether "reasonable force" was used by a defendant is whether the defendant *believed* that deadly force was necessary to repel the attack. *State* v. *DeJesus,* supra. Next, the jury's inquiry should focus on the question of whether that *belief* was reasonable. Id. "This statutory emphasis on the defendant . . . demonstrates the function of the jury in their evaluation of the self-defense claim." *State* v. *Corchado,* supra.

The trial court, however, replaced this subjective-objective inquiry into the degree of force with one that focused exclusively on the question of whether a reasonable person ("an average person of ordinary intelligence") would have used deadly force in this situation. The trial court's formulation of the inquiry did not properly explain to the jury its need to examine and evaluate the defendant's subjective belief as to the amount of force necessary. Id.

We must determine, however, whether the improper instruction when subjected to a harmless error analysis is harmless beyond a reasonable doubt. *State* v. *Golding,* supra, 239–40; *State* v. *Gilchrist,* supra, 633. Where, as here, the improper instruction is of constitutional dimension, the test is whether it is reasonably possible that the jury was misled. *State* v. *Gilchrist,* 634. We conclude that it is not reasonably possible that the jury was misled.

First, we note that the principal factual issues did not turn on the subtleties of the law of self-defense for their proof. See *State* v. *Quintana,* 209 Conn. 34, 47–48, 547 A.2d 534 (1988). The degree of force used by the defendant was not the central focus of the disputed testimony. Rather, the case presented to the jury concerned the question of determining what exactly happened leading up to the point that the defendant used force against the deceased.

We are further guided by the commonly repeated general rule that "[a] charge to the jury is not to be clinically dissected nor are portions of the charge to be read in isolation from the entire instruction." *State* v. *Toczko,* supra. This proposition is worthy of special consideration when examining portions of a charge on the same legal principle. Although the defendant's perception of the danger he faced and his use of force in response to that danger may be two distinct legal concepts for purposes of analyzing the trial court's instruction, they are so inextricably intertwined that they cannot be analyzed in a vacuum, one separated from the other. The degree of force used by a defendant must necessarily be evaluated in relationship to *something.* That something is the danger that was perceived by the defendant.

In its charge, the trial court made abundantly clear that the danger against which the defendant used force

was "to be determined from his standpoint at the time of the attack, and under all the existing circumstances."[5] Thus, the jury was properly instructed to "view the situation from the defendant's perspective" (a subjective test) in assessing the risk which the defendant perceived he was facing. *State* v. *Brown,* 22 Conn. App. 521, 529, 577 A.2d 1120 (1990). This part of the instruction enabled the jury properly to carry out its duty to examine the evidence both subjectively and objectively, while keeping in mind that the defendant's conduct must "be judged ultimately against that of a reasonably prudent person." Id.

Taken as a whole the charge sufficiently apprised the jury that the test for self-defense is both subjective and objective. Notwithstanding the trial court's improper definition of the degree of force that may be used by a defendant claiming self-defense, the entire charge on self-defense adequately informed the jury that "[t]he use of deadly force must ultimately be reasonable in the circumstances." *State* v. *Tyson,* 23 Conn. App. 28, 37, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990).

---

[5] At some length, the trial court emphasized the subjective nature of the jury's inquiry in this regard: "The danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack, and under all the existing circumstances. The action leading to the defendant's claim of self-defense need not be an actual threat or assault. The test is not what the other person actually intended, but what the aggressor's act caused the defendant reasonably to believe was his intention. In other words, the danger need not have been actual, if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable.

"In judging the danger to himself, however, the defendant is not required to act with infallible judgment. On the other hand, one exercising the right of self-defense is required to act instantly, and without time to deliberate and investigate. Under such circumstances it is often possible to mistake an actual threat when none, in fact, existed, but the law does not require the same coolness in judgment in estimating his danger that you can exercise in reviewing the facts of this case."

The defendant's final claim is that the trial court failed to instruct the jury on self-defense as it applied to the lesser included offenses. The defendant requested that the trial court instruct the jury that his claim of self-defense "applies to the murder charge *and all lesser homicides*" on which the jury was to be instructed. (Emphasis added.) The trial court, however, instructed the jury that self-defense was applicable to the charge of murder but failed to do so specifically[6] with respect to the lesser included offenses of manslaughter in the first degree in violation of General Statutes §§ 53a-55 (a) (1) and (a) (3) and manslaughter in the second degree in violation of General Statutes § 53a-56 (a).

A claim of self-defense applies to these lesser included offenses. *State* v. *Hall,* supra; *State* v. *King,* 24 Conn. App. 586, 590 A.2d 490 (1991). The failure to discuss self-defense specifically in connection with each lesser included offense, however, was harmless.

Here, as in *State* v. *Hall,* supra, 589, "[t]he trial court instructed the jury on the charged offense of murder as well as the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. The trial court's instruction on self-defense, while limiting the applicability of that defense, did not eliminate the jury's consideration of it. Rather, the jury was fully instructed on the law of self-defense with respect to murder and manslaughter in the first degree [by reason of extreme emotional disturbance] . . . ." Just as the jury in *Hall* was told that self-defense would be a "complete justification" of that defendant's conduct, the jury here was instructed on the elements of murder and was repeatedly told: "If you find that the

---

[6] We note that, although the trial court did not instruct the jury on self-defense when it separately discussed the lesser included offenses, it did make clear several times in its jury instructions that the defendant was "not guilty of anything" if the jury found that he acted in self-defense.

defendant acted in self-defense, you will find him not guilty by reason of self-defense, and that will be the end of your inquiry." Thus, our Supreme Court's conclusion in *Hall* is equally applicable here. "[T]he jury's verdict of guilty on the offense of manslaughter in the first degree was necessarily a rejection of the defense of self-defense. . . . [T]he defendant would not have benefited by an instruction that the defense was applicable" to the lesser included offenses. Id. It is not reasonably possible, therefore, that the jury was misled by the trial court's failure to instruct the jurors properly.

The judgment is affirmed.

In this opinion the other judges concurred.