STATE OF CONNECTICUT *v.* CHARLES ANDERSON
(10039)

DALY, LAVERY and FREEDMAN, Js.

Argued May 11—decision released September 1, 1992

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and two counts of the crime of carrying a pistol without a permit in violation of General Statutes § 29-35.[1] The defendant claims that the trial court (1) improperly

---

[1] The jury acquitted the defendant of two additional charges, attempted murder, and attempted robbery in the first degree.

instructed the jury regarding self-defense, and (2) made a series of improper interrelated rulings that had the cumulative effect of depriving the defendant of his right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early morning hours of March 21, 1990, the victim was involved in a craps game with the defendant and another individual, "Cat" Bunkley, at the defendant's apartment in Hartford. The game ended at approximately 2 a.m. when the victim had won approximately $1100 from the defendant and Bunkley. At that time, there was a discussion between the defendant and the victim about the return of some money to the defendant, which he claimed the victim owed to him for a loan made approximately one year earlier. The victim refused to give the defendant any money, but stated that he would "see what [he could] do." The victim then decided to return to his apartment, which was directly across the street, to count his winnings.

On his way out of the apartment building, the victim stopped by the apartment of some friends, William and Kenneth Stewart, and told them about his winnings and asked them to escort him across the street to his apartment. The three left the Stewarts' apartment, and were accompanied across the street by the defendant and Bunkley. While they walked, one of the Stewarts heard the defendant ask the victim, "Do you have anything for me?"

When the group reached the victim's apartment, the victim and the Stewarts entered through a door that opened into the kitchen. They closed the door behind them, leaving the defendant and Bunkley in the hall. The victim began counting his cash when the defendant knocked on the door. When the victim opened the door, the defendant asked for money from the victim,

who advised the defendant to wait until he finished counting his winnings and then closed the door. The defendant then knocked on the door again. The victim opened the door a second time and told the defendant to wait, and when the victim tried to close the door again, the defendant stuck his foot in the threshold to prevent the victim from closing it.

At this time, the victim moved toward one side of the kitchen to light a cigarette over the stove, which was near the doorway in which the defendant was then standing. As he did so, the defendant pulled out a pistol and shot the victim in the right shoulder. The defendant then left the scene.

The defendant first claims that the trial court improperly instructed the jury on the law applicable to his self-defense claim. Specifically, he claims that in instructing the jury on self-defense pursuant to General Statutes § 53a-19,[2] the trial court improperly stated that

[2] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such

the "reasonable force" to be evaluated by the jury "is that force which *an average person of ordinary intelligence* in like circumstances would judge to be necessary to prevent injury and no more."[3] (Emphasis added.) In other words, this portion of the charge given by the trial court instructed the jury to evaluate the defendant's use of force strictly on an objective basis. The defendant argues that this definition of reasonable force impermissibly replaced the subjective-objective standard required by § 53a-19 and, therefore, deprived the defendant of his constitutional right to have his jury properly instructed.

The defendant has not properly preserved this claim for appellate review. He seeks review, however, under the well established principles for reviewability of unpreserved constitutional claims as set forth in *State* v. *Golding,* 213 Conn. 232, 239–40, 567 A.2d 823 (1989),[4] because his fundamental right to present a defense includes a proper instruction on the elements of self-defense. *State* v. *Gilchrist,* 24 Conn. App. 624,

other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[3] The trial court also instructed the jury as follows: "A defendant claiming justification of self-defense may use—may only use reasonable force to defend himself. Reasonable force is the amount of force that would be used by an average person of ordinary intelligence acting under the same circumstances."

[4] Under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the defendant can prevail on his unpreserved constitutionally based claims only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

632–33, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). On the basis of *State* v. *Williams,* 25 Conn. App. 456, 462, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991), we conclude that the defendant cannot prevail on this claim because the court's instruction, although containing an incorrect statement of the law, was harmless beyond a reasonable doubt.

In *Williams,* the defendant challenged the following language of the trial court's instruction on self-defense: " '[R]easonable force' . . . 'is the amount of force that would be used by an average person of ordinary intelligence, acting under the same circumstances.' " Id., 463. As the state concedes in its brief, an instruction on self-defense that fails to instruct the jury to evaluate the defendant's use of force on a subjective-objective basis, such as the challenged instruction here and that given in *Williams,* is an incorrect statement of the law under § 53a-19.[5] Section 53a-19 requires that the jury evaluate, among other things, the perception of the danger that the defendant faced and his use of force in response to that perceived danger. "Where, as here, the improper instruction is of constitutional dimension, the test is whether it is reasonably possible that the jury was misled." Id., 465.

As *Williams* points out, the defendant's perception of the danger he faced, and his use of force in response to that perceived danger, although two distinct legal concepts for purposes of analyzing the trial court's instructions, "are so inextricably intertwined that they cannot be analyzed in a vacuum, one separated from the other. The degree of force used by a defendant must

[5] Under the subjective-objective test, the jury must first determine whether the defendant believed that the use of reasonable force was necessary, and then it must determine whether that belief was reasonable under the circumstances. *State* v. *Williams,* 25 Conn. App. 456, 464, 595 A.2d 895 (1991).

necessarily be evaluated in relationship to *something*. That something is the danger that was perceived by the defendant." (Emphasis in original.) Id. The *Williams* court then considered the instructions given by the trial court regarding the perception of danger,[6] and determined that that part of the instruction "enabled the jury properly to carry out its duty to examine the evidence both subjectively and objectively, while keeping in mind that the defendant's conduct must 'be judged ultimately against that of a reasonably prudent person.' " Id., 466. The court concluded, therefore, that the improper instruction was harmless beyond a reasonable doubt.

As previously stated, the challenged portion of the jury instruction here is nearly identical to that challenged in *Williams*. The trial court's instruction regarding the defendant's perception of danger is also nearly identical to that given in *Williams*.[7] Because we see

---

[6] In *State* v. *Williams,* 25 Conn. App. 456, 466 n.5, 595 A.2d 895 (1991), the trial court instructed the jury as follows regarding the defendant's perception of the danger he faced: "The danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack, and under all the existing circumstances. The action leading to the defendant's claim of self-defense need not be an actual threat or assault. The test is not what the other person actually intended, but what the aggressor's act caused the defendant reasonably to believe was his intention. In other words, the danger need not have been actual, if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable.

"In judging the danger to himself, however, the defendant is not required to act with infallible judgment. On the other hand, one exercising the right of self-defense is required to act instantly, and without time to deliberate and investigate. Under such circumstances it is often possible to mistake an actual threat when none, in fact, existed, but the law does not require the same coolness in judgment in estimating his danger that you can exercise in reviewing the facts of this case." (Internal quotation marks omitted.)

[7] The trial court charged the jury as follows: "The danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack and under all the circumstances. The act leading to the defendant's claim of self-defense need not be an actual threat or assault. The test is not what the other person actually intended but what

no meaningful distinction between the facts of *Williams* and the facts of the present case, we conclude that it is not reasonably possible that the jury was misled and that the improper instruction was harmless beyond a reasonable doubt.

The defendant suggests that the instruction given in his case is distinguishable from that given in *Williams* because he claims that the trial court also improperly instructed the jury regarding his duty to retreat. Section 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ." The trial court, however, instructed the jury that the defendant would not be justified in using force if he could have retreated "with safety." The defendant claims that the trial court's failure to include the word "complete" in this portion of its charge was improper, and thus, when combined with the other improper portion of the instruction, it is reasonably possible that the jury was misled. We disagree. Although the trial court's failure to include the express language of the statute in its charge to the jury may be improper; *State* v. *Holloway,* 209 Conn. 636, 651, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); *State* v. *Cobb,* 199 Conn. 322, 324–25, 507 A.2d 457 (1986); *State* v. *Carpenter,* 19 Conn. App. 48, 56–57, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834

the aggressor's act caused the defendant to reasonably believe was his intention. In other words, the danger need not have been actual if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable. In judging the danger to himself, however, the defendant is not required to act with infallible judgment. Ordinarily, one exercising the right of self-defense is required to act instantly and without time to deliberate and investigate. Under such circumstances, it is often possible to mistake an actual threat when none in fact existed but the law does not require the same coolness in judgment in estimating his danger that you can exercise in reviewing the facts of this case."

(1989); it did not alter the substantive meaning of the statute in any way. Webster's Third New International Dictionary defines safety as "freedom from exposure to danger." The term safety, therefore, necessarily entails complete safety and thus the absence of the word "complete" from the trial court's instructions was harmless beyond a reasonable doubt.

The defendant's second claim is that a combination of improper interrelated rulings had the cumulative effect of depriving the defendant of a fair trial. He claims that the trial court improperly (1) refused to admit into evidence the defendant's entire written police statement, (2) conducted an offer of proof on the defendant's self-defense claim, (3) failed to direct a mistrial in the light of prosecutorial misconduct, (4) permitted the state to impeach the defendant with a prior inconsistent statement made during the offer of proof, (5) failed to admit into evidence his written police statement after the state impeached him, and (6) excluded surrebuttal evidence offered by the defendant relating to the prior inconsistent statement. Additional facts must first be set out in order to address these claims.

At the time of the defendant's arrest, he gave a sworn written statement to the police regarding the incident in question. In it he stated that when he saw the victim move toward an open drawer, "with fear for my life I then defended myself." During the state's case-in-chief, the state sought an advance ruling, outside of the jury's presence, regarding the voluntariness of the defendant's police statement. The state indicated to the court that it did not intend to offer any part of the written statement into evidence, but it sought the ruling because it planned to call Detective Stanley Lukas, who took the defendant's statement at the police station, to testify that the defendant admitted carrying a pistol.

The defendant did not object to the request for an advance ruling. Rather, he merely argued that the pistol was inadmissible because the police had seized it during an allegedly improper warrantless arrest. The court determined that the statement was voluntarily given during a police interrogation, and Lukas then testified that the defendant told him that he carried the gun for his own protection.

At the beginning of his case, the defendant called Lukas and attempted to introduce the defendant's entire written statement through him. The defendant argued that the statement was admissible as an admission and as a declaration against interest. The court refused to permit the introduction of the statement at this time and the defendant took exception to the ruling.

The defendant then took the stand and testified as to his version of the chain of events leading up to the shooting. On direct examination, he testified that the victim was a drug and alcohol abuser and had a reputation for violence. The state objected to this testimony. It claimed that such testimony was not relevant unless the defendant presented a claim of self-defense. It requested that the defendant make an offer of proof regarding his possible self-defense claim, and the defendant did not object to this request.

During the offer of proof, which was outside of the presence of the jury, the defendant stated that he did not intentionally shoot the victim, but that the gun accidentally discharged when he pulled it out of his coat pocket. The state argued, still outside of the presence of the jury, that the defendant did not adequately present a self-defense claim through this offer because self-defense requires an intentional act, which the defendant had stated during his offer of proof did not occur. The court rejected this argument.

The jury was called back into the courtroom and the defendant continued his direct testimony. When asked about the shooting, the defendant testified that he aimed the pistol at the victim's shoulder and shot the victim to defend himself.

On cross-examination, the state questioned the defendant about his inconsistent versions of the incident. The defendant first acknowledged that he stated during his offer of proof that the shooting was accidental. The state then asked the defendant whether his decision to forgo an accident defense in his testimony to the jury was influenced by the state's argument during the offer of proof that a claim of accident precludes a claim of self-defense. The defendant denied that he heard the particular argument to which the state was referring. Upon further cross-examination, the defendant denied that he stated during the offer of proof that the gun went off accidentally.

During the state's rebuttal of the defendant's case, the state moved to admit the portion of the transcript from the offer of proof where the defendant claimed that the shooting was accidental. The state sought to admit the transcript, not for the truth of the matter contained therein, but rather to impeach the defendant by contradicting the defendant's testimony before the jury in which he denied that he made the accident claim. The trial court, over the defendant's objection, admitted the transcript. The defendant then moved to present surrebuttal testimony of the defendant to clarify, contradict and explain the prior inconsistent statement. The trial court denied the defendant's motion, to which the defendant excepted. Then, during final argument, the prosecutor highlighted the inconsistency of the defendant's claims and suggested that the defendant changed his inconsistent defense to one of simply self-defense after he heard the prosecutor's argument during the offer of proof.

The defendant first claims that the trial court improperly refused to admit into evidence the defendant's entire written police statement after the state, in its case-in-chief, elicited from Lukas certain statements that the defendant made to him during interrogation. On appeal, the defendant claims that the statement should have been admitted in order to "elicit the context in which the admission was made . . . ." Although the defendant excepted to the trial court's ruling, he failed to state on the record this reason for the statement's admission into evidence. At trial, he argued that the entire statement was admissible as an admission or as a declaration against interest.

"In raising claims of error on appeal, parties are limited to arguing the authority and grounds for objections that were presented at trial. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982)." *In re Christopher G.,* 20 Conn. App. 101, 107, 564 A.2d 619 (1989), cert. denied, 213 Conn. 814, 569 A.2d 549 (1990). We are not bound to consider claims that are not distinctly raised at trial. Practice Book § 4185. Review of evidentiary rulings is limited to the specific legal ground raised on the objection. *State* v. *Velez,* 17 Conn. App. 186, 192, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989). Because the defendant does not raise the same claim of admissibility of the statement that he did at trial, we will not review this claim.

The defendant's second challenge is to the trial court's conducting an offer of proof on the defendant's claim of self-defense. He claims that it "clearly deprived him of fair proceedings." This claim was not preserved at trial, but the defendant requests both *Golding* and plain error review of this claim.

We fail to see how this offer of proof deprived the defendant of a constitutional right. Because the defend-

ant had not interposed a self-defense issue into the case at the time he sought to have character evidence of the victim admitted, an offer of proof was an appropriate method for ascertaining whether the defendant could properly make such a claim such that the trial court could conditionally admit the evidence at the time, subject to the defendant's connecting it to a self-defense claim later. The defendant has failed to satisfy both the second and third prongs of *Golding,* and thus is not entitled to review of this claim.

The defendant's next claim appears to be one of prosecutorial misconduct. The defendant argues that the prosecutor improperly argued that a defendant cannot legally assert inconsistent defenses. During the offer of proof on the defendant's self-defense claim, the defendant stated that he did not intentionally shoot the victim, but that the gun went off accidentally when the defendant pulled it out of his jacket pocket.[8] While the

---

[8] The following dialogue between the defendant and his attorney appears in the transcript:

"Defense Attorney: When you pulled out your handgun, what were you going to do?

"Defendant: Well, initially, I was going to let him know not to make that move because something, you know, might happen if you threaten me about, you know, about killing me.

"Defense Attorney: All right. And then what happened?

"Defendant: Well, the gun went off.

"Defense Attorney: Did you aim it at him?

"Defendant: Well, not intentionally aimed at him because if I aimed at him and was going to use it in that respect, I would have shot him in the head or something if I was trying to kill him.

"Defense Attorney: Did you intentionally shoot the gun?

"Defendant: No.

"Defense Attorney: What happened?

"Defendant: It went off when I pulled it out. It was such a fast act with him telling me he's going to show me and—

"Defense Attorney: Well, how was it he was shot in the—in his right shoulder? What happened when—

"Defendant: I don't understand.

"Defense Attorney:—you pulled the gun out?

"Defendant: Would you like me to go through the motions?

"Defense Attorney: Yes."

jury was still out, the state argued that this testimony would not inject the issue of self-defense into the case. It argued that because he testified that the gun went off accidentally, he cannot claim self-defense because self-defense requires an intentional act. Later, when the defendant presented self-defense testimony to the jury, the state attempted to impeach the defendant with the statement made at the offer of proof. Then, during its summation, the state highlighted the inconsistency in the defendant's defense.

The defendant did not preserve this claim, but argues that it is amenable to *Golding* review. We first note, however, that the state's initial argument regarding the inconsistent claims was made outside of the jury's presence during the defendant's offer of proof, and therefore did not harm the defendant in any way. When the prosecutor asked the defendant on cross-examination whether he changed his defense after he heard the prosecutor's argument regarding inconsistent defenses during the offer of proof, the trial court limited the questioning to whether the defendant had heard an argument concerning the law of inconsistent defenses. The prosecutor did not state that the law prohibits inconsistent defenses. Then, when the prosecutor commented on the inconsistent defenses during summation, he did not claim that the law prohibited them, but rather highlighted the defendant's retreat from his accident defense as bearing on his credibility. Although *State* v. *Harris,* 189 Conn. 268, 273, 455 A.2d 342 (1983), permits a defendant to assert inconsistent defenses, it does not prohibit the state from exposing the defendant's inconsistent positions on cross-examination. Because the defendant has failed to demonstrate a pattern of misconduct repeated throughout the trial or that the prosecutor's conduct was blatantly egregious, the defendant cannot prevail on his unpreserved prosecutorial misconduct claim.

*State* v. *Tweedy,* 219 Conn. 489, 509–10, 594 A.2d 906 (1991); *State* v. *Williams,* 204 Conn. 523, 536–37, 529 A.2d 653 (1987).

The defendant also claims that the trial court improperly permitted the state to impeach the defendant with statements he made under oath during the offer of proof. After the defendant testified on direct examination that he shot the victim in self-defense, the state, on cross-examination, asked the defendant whether he remembered saying during the offer of proof that the gun went off by accident. The defendant, at one point in his testimony, responded affirmatively to the state's questioning. The defendant argues that the impeachment was improper because the defendant admitted that he had made inconsistent statements.

"A trial court has wide discretion in allowing prior inconsistent statements to impeach the testimony of a witness. *State* v. *Torres,* 210 Conn. 631, 640, 556 A.2d 1013 (1989). Every reasonable presumption will be made in favor of the trial court's proper exercise of its discretion. *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985)." *State* v. *Graham,* 21 Conn. App. 688, 703, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990).

" 'It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimension, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him.' *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). The question is whether the claimed erroneous action of the trial court is likely to have affected the result of the trial. *State* v. *Brown,* 199 Conn. 14, 25, 505 A.2d 690 (1986); *State* v. *Gonzales,* 196 Conn. 115, 119, 491 A.2d 1067 (1985)." *State* v. *Torrice,* 20 Conn. App. 75, 91, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989). The

defendant has failed to demonstrate to us how the admission of the prior inconsistent statement was harmful to him. Because of this failure, the defendant's claim must fail.

The defendant also claims that once the prior inconsistent statement was elicited through the state's cross-examination of the defendant, his entire written statement to the police should have been admitted to rehabilitate the defendant because in it the defendant had stated that he acted in self-defense. As the state points out and we concur, however, "the defendant ignores the fact that he never moved to admit the written statement following the state's admission of the transcript excerpt. In essence, he does no more than fault the court for not assuming the role of his advocate." Further discussion of this claim, therefore, is unwarranted.

Finally, the defendant claims that he should have been able to testify in surrebuttal after the state introduced into evidence certain portions of the transcript from the offer of proof. He claims that the trial court improperly precluded him from rehabilitating his credibility by explaining what he meant when he stated that the gun went off by accident.

"The trial court is vested with considerable discretion in the matter of rebuttal evidence. *State* v. *Simino*, 200 Conn. 113, 123, 509 A.2d 1039 (1986); *State* v. *Lisella*, 187 Conn. 335, 337, 445 A.2d 922 (1982). 'Ideally, rebuttal evidence is that which refutes the evidence [already] presented . . . rather than that which merely bolsters' one's case. *State* v. *Lisella*, supra." *State* v. *Wood*, 208 Conn. 125, 139, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988).

The state's rebuttal evidence was not new evidence. Rather, it was simply relevant portions of the transcript of the defendant's testimony during the offer of proof.

The defendant had already been cross-examined about these statements and, in fact, admitted the very inconsistency that the transcript contained regarding the accidental shooting. The defendant had ample opportunity to rehabilitate his credibility when he was previously examined on redirect. The trial court concluded that the defendant "could have explained [the inconsistency] this morning." In other words, the testimony that the defendant sought to provide on surrebuttal did not respond to anything new. We conclude that the trial court did not abuse its discretion.

Because none of these issues merits our review or is meritorious upon our review of it, we conclude that the cumulative impact of these rulings did not deny the defendant a fair trial. See *State* v. *Harris,* 182 Conn. 220, 230–33, 438 A.2d 38 (1980); *State* v. *Hudson,* 14 Conn. App. 463, 472, 541 A.2d 534, cert. denied, 209 Conn. 803, 548 A.2d 439 (1988).

The judgment is affirmed.

In this opinion DALY, J., concurred.

LAVERY, J., dissenting. Because I cannot agree with the majority's conclusion that the trial court's jury instruction, misstating the law on self-defense in two critical respects, was harmless beyond a reasonable doubt, I respectfully dissent.

I

It is the law in Connecticut that, " '[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. [*State* v. *Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979)]. "[A] defendant is 'entitled to have instructions presented relating to any theory of defense for which there

is any foundation in the evidence, no matter how weak or incredible . . . .' *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956)." *United States* v. *Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir. 1976). "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) . . . ." *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982).' *State* v. *Fuller,* [199 Conn. 273, 278, 506 A.2d 556 (1986)]. When the legislature has created a legally recognized defense, the defendant is entitled to a proper jury instruction on the elements of that defense so that the jury may ascertain whether the state has sustained its burden of disproving the defense beyond a reasonable doubt. Id.; *State* v. *Miller,* supra, 660–61." *State* v. *Havican,* 213 Conn. 593, 597–98, 569 A.2d 1089 (1990).

In *State* v. *Miller,* supra, 660–61, our Supreme Court stated that this fundamental constitutional right to establish a defense includes proper jury instructions on the elements of self-defense "so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified."

In this case the trial court twice incorrectly instructed the jury that it was to evaluate reasonable force under a strictly objective standard, that reasonable force is "that force which an average person of ordinary intelligence in like circumstances would judge to be necessary to prevent injury and no more." The majority concedes that this is an incorrect statement of law; *State* v. *Hall,* 213 Conn. 579, 586, 569 A.2d 534 (1990); but concludes that the incorrect instruction on reasonable force was harmless beyond a reasonable doubt in

the light of this court's decision in *State* v. *Williams,* 25 Conn. App. 456, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).

In *Williams,* an instruction identical to the one at issue here was found to be improper. Id., 464. In that case, the defendant was convicted of manslaughter committed under the influence of extreme emotional disturbance. Id., 457. In addition to self-defense, the jury had to decide the effect of intoxication on the defendant's intent, as well as whether he was influenced by extreme emotional disturbance. Id., 458–60. This court found that the "average person of ordinary intelligence" instruction was clearly improper, but that within the context of that case the improper instruction was harmless error. Id., 464–66. In the present case, where self-defense was the only contested issue, the error *is* harmful.

The law is clear that a jury is not to use a purely objective standard in evaluating self-defense. Indeed, the statute focuses on the person claiming self-defense. *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982). "The starting point of the jury's inquiry into whether 'reasonable force' was used by a defendant is whether the defendant believed that deadly force was necessary to repel the attack. *State* v. *DeJesus,* [194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984)]." (Emphasis in original.) *State* v. *Williams,* supra, 464.

The defendant's beliefs were central to his claim that he acted in self-defense. Both he and his fiancee testified that the victim was known to be armed and had a reputation for violence. The victim was a convicted felon, drug user, drinker, and gambler. Of paramount importance was that the victim had been armed with a gun and threatened the defendant in the past, and that the defendant believed him to be a bully and was afraid of him.

Additional evidence relevant to the defendant's reasonable beliefs under the circumstances was that he had been robbed at gunpoint at Stowe Village, and another time his home was broken into and he personally encountered the intruder. He testified to his belief that the Stowe Village housing project, where the incident occurred, was a high crime area, especially at night, and to his belief that there were fewer police officers there at night, which is when the incident occurred. These factors were all highly relevant to how much force *he* believed to be necessary under the circumstances. This accumulated evidence was relevant not to what the average person would have believed, but to what *the defendant* reasonably believed. He was entitled to a jury that was properly instructed on how to evaluate *his* reasonable beliefs.

The "Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. [General Statutes § 53a-19 (a)] requires, however, that the defendant's belief ultimately must be found to be reasonable." *State* v. *DeJesus*, supra; *State* v. *Williams*, supra, 464. Only after the jury has focused on the situation from the defendant's perspective, may it decide whether his belief was reasonable. " 'This statutory emphasis on the defendant . . . demonstrates the function of the jury in their evaluation of the self-defense claim.' *State* v. *Corchado*, supra." *State* v. *Williams*, supra. The jury must evaluate the danger a defendant claims to have faced, and the reasonableness of his response to that danger.

Another difference between this case and *Williams* is that the trial court's instruction in *Williams* was incorrect only as to the reasonable force portion of the self-defense instruction. *State* v. *Williams*, supra,

462–63. In this case, the self-defense instruction incorrectly defined *both* reasonable force *and* the defendant's duty to retreat.

## II

The trial court instructed the jury that before using deadly physical force the defendant had a duty to retreat if he could have done so with safety. Section § 53a-19 (b) (1), however, provides that a person need only retreat if he can do so "with complete safety." In reaching its conclusion that the incorrect instruction on the duty to retreat was harmless beyond a reasonable doubt, the majority decided that the word safety necessarily encompassed "complete safety." Such a conclusion is not in accord with our well established rules of statutory construction.

"When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance. . . . Similarly, we presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, that it did not intend to enact meaningless provisions . . . ." (Citations omitted; internal quotation marks omitted.) *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 27 Conn. App. 412, 420, 606 A.2d 725, cert. granted on other grounds, 222 Conn. 911, 608 A.2d 694 (1992). "Our conclusion is also supported by the principle that ' "[n]o word in a statute should be treated as superfluous, void or insignificant . . . ." ' "

Complete safety is a higher standard than mere safety, and the language of the statute calls for that standard to be applied. If the majority's conclusion is correct, however, the word complete serves no meaningful purpose in the statute and is nothing more than mere surplusage.

The defendant testified at trial that he did not have time to retreat, and that he believed had he done so he would have been shot in the back. The defendant was entitled to a correct charge on his duty to retreat with complete safety, as it was a pivotal question in the defendant's self-defense claim. A commonsense reading of the statutory language indicates that the legislature intended that the state must meet the higher burden of showing that the defendant could have retreated with complete safety, not with mere safety. I would find the omission of the word complete to be harmful.

Self-defense was the only defense presented by the defendant in this case. Because the charge on self-defense was patently incorrect in two critical respects, I cannot agree that the errors were harmless beyond a reasonable doubt. I would reverse and remand for a new trial.

Accordingly, I respectfully dissent.