STATE OF CONNECTICUT *v.* JORGE JIMENEZ
(11272)

FOTI, LAVERY and LANDAU, Js.

Argued December 14, 1992—decision released February 23, 1993

*Joseph G. Bruckman,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from his conviction, after a jury trial, of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] He claims that the trial court improperly instructed the jury as to the "initial aggressor" exception to the law of self-defense in light of the evidentiary basis for the claim of self-defense he raised. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 18, 1984, Thomas Comacho, the victim, lived in a third floor apartment at 596 Pembroke Street in Bridgeport with his girl friend, Suma

---

[1] The defendant was found not guilty of the first two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a) and the fourth count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). We note that the judgment file erroneously entitled this fourth count as "attempted" assault in the first degree.

Pagan, and their child. The defendant lived in a second floor apartment with his girl friend, Sandra Pagan, Suma's sister. The defendant and Thomas Comacho had not been getting along for approximately two months. As Comacho was leaving the building and walking by the second floor, the defendant came out of his apartment and into the hallway holding a sawed-off shotgun. Comacho raised his hands and asked the defendant not to shoot him. The defendant then made a threatening remark and shot Comacho in the left leg. Comacho fell to the floor and lost consciousness. As a result of his wound, he spent several months in the hospital and underwent five operations on his left leg, which is now two and one-half inches shorter than his right leg.

On the night of the shooting, Thomas Comacho's brother, Israel Comacho, was standing outside the apartment building at 596 Pembroke Street when he heard a shot. Israel pulled out a gun, ran up the front stairs of the building, ran after the defendant and fired at him. The defendant, in return, shot Israel Comacho in the back of the neck.[2]

The defendant did not deny shooting both Thomas and Israel Comacho. He did, however, raise a claim of self-defense. As part of this claim, the defendant testified that two days before the shooting, on August 16, the Comacho brothers had challenged him to come out of his apartment; when he did, they fired six shots in his direction. The defendant testified that he believed that the Comachos were trying to kill him. He stated that on the day after they shot at him, the brothers, who were working on a car in front of the apartment building, "checked him out" and made a move toward the interior of the car. The defendant testified that he was frightened. He obtained two sawed-off shotguns

---

[2] The jury acquitted the defendant of both counts involving the shooting of Israel Comacho.

after Sandra Pagan told him that her sister had said that the Comachos had bought a box of bullets and were going to kill him. The Comacho brothers both testified and denied all of the defendant's allegations about the August 16 shooting.

The issue in this appeal is not whether there was sufficient evidence to support a jury instruction on self-defense. The sole issue is whether the trial court improperly instructed the jury as to the "initial aggressor" exception to General Statutes § 53a-19 (a),[3] which is contained in General Statutes § 53a-19 (c).[4]

The defendant does not contend that the trial court improperly defined the law of self-defense contained in § 53a-19 (a). The defendant also does not dispute that the court properly concluded its instruction on self-defense by referring to the state's burden of disproving the defense beyond a reasonable doubt, the reasonableness of the defendant's belief as a key inquiry for the jury, and the requirement that the jury separately apply the principles of self-defense to the defendant's actions toward each of the alleged victims. Rather, the

---

[3] General Statutes § 53a-19 (a) provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[4] General Statutes § 53a-19 (c) provides: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

defendant claims that the court, after defining the relevant statutory terms, improperly instructed the jury as to General Statutes § 53a-19 (c) as follows: "On the law of self-defense, the law recognizes certain exceptions to the justification of the use of physical force as self-defense, and in this case specifically, the use of deadly physical force. Those were earlier referred to as subsections (b) and (c) of § 53a-19.

"Subsection (c) insofar as is applicable to this case states as follows, that, again, 'Notwithstanding the provisions of subsection (a), that a person is not justified in using physical force when he [meaning the defendant] was the aggressor.' This exception presents a question of fact for you to determine. *Thus, if you find proven beyond a reasonable doubt that the defendant was, in fact, the aggressor, meaning that he was the first to use physical force, then the state has succeeded in disproving the defense of self-defense.*" (Emphasis added.)

The defendant duly noted his sole exception to the charge, stating: "My exception regarding the charge of self-defense, Your Honor defined for the jury the initial aggressor as the first one to use physical force. Mr. Eisenman and I have some sort of feud, he sees me pull my coat back, and he pulls out a gun and he shoots me in self-defense. He is the initial aggressor, he is the first one to use force, and that is why the way Your Honor defined that term, and it's more than the person—it's not the first one who, you know, actually shoots a gun; it's the initial aggressor is the first one who causes the problem which gives rise to the incident."[5]

---

[5] We note that in his closing argument to the jury, the defendant's counsel stated: "Initial aggressor doesn't mean I call you a name, you take out a gun, and I shoot you, and I was the initial aggressor. It has to be someone who does something physical, violence. If I punch you, you take out a gun and then I shoot you, I have been the aggressor in that case. That is what the law is, if it's appropriate. The judge will instruct you on that."

The defendant also filed a motion for a new trial in which he claimed that the court's instructions on the initial aggressor exception under General Statutes § 53a-19 (c) (2) were incorrect and in conflict with § 53a-19 (a) (1) and (2). He claimed that the court's instructions violated his rights to present a defense and to due process of law secured by the fifth, sixth and fourteenth amendments to the United States constitution. The defendant took an exception to the trial court's denial of this motion.

There is no question that "[t]he standard of review to be applied to a claim of an improper instruction on the elements of self-defense is whether it is reasonably possible that the jury was misled. *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). The charge is to be read as a whole; sections are not to be judged in isolation from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978). The charge is not to be 'critically dissected in a microscopic search for possible error.' *State* v. *Foreshaw,* 214 Conn. 540, 548, 572 A.2d 1006 (1990). The test to be applied to any part of a charge is whether the charge as a whole presents the case to the jury in a manner to prevent injustice. *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982). We review the whole charge to determine whether it sufficiently guided the jury to a proper verdict. *State* v. *Shaw,* 24 Conn. App. 493, 499, 589 A.2d 880 (1991)." *State* v. *Hester,* 28 Conn. App. 469, 472, 612 A.2d 120 (1992).

General Statutes § 53a-19 (a) provides in.part that, subject to the exceptions in subsections (b) and (c), "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force . . . which he reasonably believes to be necessary for such purpose . . . ." "[A] person may

not use 'deadly physical force' unless he reasonably believes that the other person is either 'using or about to use deadly physical force' or is 'inflicting or about to inflict great bodily harm.' " *State* v. *DeJesus,* 194 Conn. 376, 389, 481 A.2d 1277 (1984). General Statutes § 53a-19 (c) provides an exception to this rule, as follows: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor . . . ." "[B]y the terms of the statute, the use of force in self-defense . . . is never justified where the conditions set forth in [§ 53a-19 (c)] are found to exist." *State* v. *Silveira,* 198 Conn. 454, 469, 503 A.2d 599 (1986). "Whether the defendant did, in fact, act with such intent and whether he was the initial aggressor are critical circumstances in the jury's evaluation of his claim of self-defense." *State* v. *Corchado,* supra, 664.

The function of the charge is to assist the jury in correctly applying the law to the facts that it finds are established. *State* v. *Havican,* 213 Conn. 593, 603, 569 A.2d 1089 (1990). We conclude that, when read as a whole, the trial court's instruction on self-defense performed this function. The charge was in accordance with General Statutes § 53a-19 and presented the case to the jury in a manner so that no injustice resulted.

The defendant states that the "focal point of the defense as to the charges pertaining to Thomas Comacho was the reasonableness of the defendant's belief as to what Thomas *was about to do* at the time the defendant shot him." (Emphasis in original.) This was precisely the "focal point" of the trial court's instructions to the jury.

The court began its instruction on self-defense by stating: "Self-defense is a means by which the law justifies the use of force which would otherwise be illegal. Once self-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt. *A person is justified in the use of reasonable physical force upon another when he reasonably believes that such force is necessary to protect himself or another person from the use of or the impending use of force by another.* Self-defense is a legal defense to the use of force which would otherwise be criminal." (Emphasis added.)

The court then read to the jury the statutory definition of self-defense contained in § 53a-19 (a). After doing so, the court said: "In this case, we are talking about the use of deadly force by the defendant. It is therefore the last portion of this statute on self-defense that is implicated in this case, and therefore I am going to read it to you again. 'Except that deadly force may not be used unless the actor reasonable believes that such person is using or about to use deadly physical force, or inflicting or about to inflict great bodily harm.' " The court thereafter defined the terms "deadly physical force," "using," and "about to use."

The court continued to focus the jury's attention on the defendant's reasonable belief with respect to Thomas Comacho, stating: "In this case, there is no evidence that at the time of the shooting that Thomas Comacho actually used any deadly physical force upon the defendant. So the issue as to Thomas Comacho is whether the defendant reasonably believed that Thomas Comacho was about to use deadly physical force upon him, or about to inflict great bodily harm upon him. If the state disproves that belief, and its reason is beyond a reasonable doubt, you would reject the defense as to self-defense as to Thomas Comacho."

After defining the exceptions to § 53a-19 (a) contained in 53a-19 (b) and (c), the court continued to stress that "[t]he statute focuses on the person claiming self-defense. It focuses on what he reasonably believes under the circumstances, and presents a question of fact for the jury."[6]

The defendant argues that by defining "the aggressor" as "the first to use physical force," the trial court foreclosed his right to have the jury pass on his self-defense claim under § 53a-19, since "in this case there was certainly no dispute that the defendant was the first to use physical force." We do not agree. Our review of the record shows that the trial court's instruction to the jury on self-defense, read as a whole, was correct in the law, adapted to the issues and sufficient

[6] The court stated: "In other words, what is important is what the defendant reasonably believed under the circumstances in this case. The test for the degree of force in self-defense is both a subjective and an objective test, meaning it has some objective aspects or, excuse me, it has some subjective aspects and some objective aspects. Self-defense thus requires the jury to measure the justifiability of the defendant's actions from the subjective standpoint; that is what the defendant reasonably believed under the circumstances presented in this case, on the basis of what the defendant perceived them to be.

"Section 53a-19 (a) requires, however, that the defendant's belief must be found to be reasonable, and not irrational or unreasonable under the circumstances as he was presented with them. That is, would a reasonable person in the defendant's circumstances have reached that belief? That is the objective aspect of the test. So it is both a question of what his belief was, and whether it was a reasonable belief.

"In this case, if you find proven beyond a reasonable doubt that either victim was not using or about to use deadly physical force or inflict great bodily harm upon the defendant, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use deadly physical force or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim. And you would, under those conditions, reject the defense of self-defense."

In concluding its instruction on self-defense, the court cautioned the jury to "[r]emember . . . that the burden remains on the state to disprove the defense of self-defense beyond a reasonable doubt, and to disprove beyond a reasonable doubt the defendant's belief it was reasonable."

to guide the jury. See *State* v. *Shaw,* 185 Conn. 372, 383, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982). We believe the court's instructions made it clear that even though the defendant was the first to use physical force on the day he shot Thomas Comacho, it was up to the jury to determine if, in fact, he was the initial aggressor.

The jury had before it evidence in the form of the defendant's allegations that the victim and his brother had summoned the defendant from his apartment and shot at him on August 16. Because the court's instruction did not limit to August 18, the day the victim was shot, the period during which the jury could determine who was the initial aggressor, the jury's function was not thwarted by the challenged instruction. Had the jury believed the defendant's allegations regarding the Comachos' shooting at him, it might properly have determined that he was not the initial aggressor. Moreover, the court's instructions also would have permitted the jury to find that the defendant was justified in using deadly force on August 18, if they determined that he reasonably believed Thomas Comacho was about to use deadly physical force or to inflict great bodily harm, in view of the shooting that had occurred two days earlier.[7]

Considering the trial court's charge as a whole, we conclude that it was not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] General Statutes § 53a-3 (5) defines deadly physical force as "physical force which can be reasonably expected to cause death or serious physical injury." The threat of serious physical injury and the threat of great bodily harm may justify the use of deadly force. *State* v. *Roman,* 25 Conn. App. 734, 737–38, 596 A.2d 930 (1991). However, "[t]he use of deadly force must ultimately be reasonable in the circumstances." *State* v. *Tyson,* 23 Conn. App. 28, 37, 579 A.2d 1083 (1990).