STATE OF CONNECTICUT v. CLAYTON HARRISON
(11508)

DUPONT, C. J., DALY and LANDAU, Js.

---

Argued June 9—decision released August 31, 1993

*Michael K. Courtney,* assistant public defender, with whom, on the brief, was *Judith M. Wildfeuer,* certified legal intern, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, *Patricia A. Gilbert* and *Brian Cotter,* assistant state's attorneys, and *Ronald DeMatteo,* certified legal intern, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1]

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circum-

The defendant claims (1) that the trial court's charge to the jury on self-defense was improper and deprived the defendant of his due process and statutory rights to present a defense in that the trial court (a) failed to include an instruction that the threat of great bodily harm encompassed a threat of robbery, (b) included a charge that self-defense does not apply to the lesser included offenses of murder, General Statutes § 53a-54a (a), (c) failed to instruct properly the jury on the degree of force the defendant could justifiably use in self-defense, and (d) failed to instruct properly the jury on the law of retreat, and (2) that the combined effect of several of the trial court's evidentiary rulings denied him his fundamental right to present a defense. We affirm the judgment of the trial court.

## I

## A

The defendant first claims that the trial court's instruction on the circumstances justifying the use of deadly physical force under General Statutes § 53a-19[2]

---

stances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

[2] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pur-

improperly failed to convey to the jury that the threat of great bodily harm included a threat of robbery. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Havican,* 213 Conn. 593, 598, 569 A.2d 1089 (1990). When a defendant challenges the trial court's failure to charge as requested, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support. . . ." (Citations omitted; internal quotation marks omitted.) Id., 595.

When the evidence is viewed in the light most favorable to the defendant, the following facts can be found. On July 29, 1991, shortly before midnight, the defendant and two friends, Eugene McCallum and Crystal Copeland, left the defendant's apartment to buy cigarettes and food at a local service station and convenience store in Danbury. The defendant had permission to use his cousin's van. Because the defendant did not have a driver's license, he asked McCallum to drive. When they arrived at the service station, the defendant and Copeland entered the store, made their purchases and returned to the van. The defendant was

suant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

seated behind the driver's seat and Copeland was seated in the passenger seat. A car pulled up as the defendant and his friends were preparing to leave the service station. The victim and three others emerged from the car and the victim approached the driver's side of the van, demanding that the van be turned over to him in payment for a debt he claimed the defendant's cousin owed him.

When the defendant stated he did not know about the debt and refused to relinquish the van, the victim reached into the van and began slapping and punching the defendant in the face and head. McCallum started to drive away, but the victim hung on to the driver's open window, causing McCallum to stop the van. At that point, the victim resumed striking the defendant despite the defendant's pleas for the victim to stop. The defendant could not dodge the blows because the back of the van was cluttered with what the defendant referred to as junk, tool boxes, a bicycle and clothes. The defendant tried to tell the victim that he was willing to contact his cousin to determine whether the victim was entitled to the van. After the victim threatened to kill him, the defendant grabbed a loaded .22 caliber pistol that was kept in the van, asked the victim to leave him alone, and shot him.[3] The defendant then instructed McCallum to drive back to his apartment. En route, the defendant continuously denied shooting the victim when McCallum stated that he had. Approximately two hours later, at the Danbury hospital, the victim died from the gunshot wound. The

[3] According to Arkady Katznelson, the associate medical examiner who performed the autopsy on the victim, the gun was either fired from more than three feet away from the victim or, the particles of gunpowder that usually encircle the entrance wound had been removed in the hospital during treatment of the victim. This evidence is significant as the defendant contends that the shot was fired at close range whereas the state claims that the shot was fired from a distance greater than three feet.

defendant testified that he was afraid because of the victim's assault on him and because he was having difficulty breathing due to his medical condition.

The victim was eighteen years old. The autopsy report revealed that he was about five feet nine inches tall and weighed 150 pounds. The defendant, in contrast, was fifty-five years old, five feet six inches tall and 118 pounds on the day of the shooting. He was taking medication on that day for shortness of breath, pneumonia and pain. He suffered from chronic obstructive pulmonary disease and emphysema and had been diagnosed with the AIDS[4] virus.

A person is entitled to a proper jury instruction on the elements of every defense the legislature has created so that the jury may determine whether the state has sustained its burden of disproving the defense beyond a reasonable doubt. *State* v. *Havican,* supra. "If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . [A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." (Citations omitted; internal quotation marks omitted.) Id., 597. "The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established. . . ." (Citations omitted; internal quotation marks omitted.) Id., 603; *State* v. *Jimenez,* 30 Conn. App. 406, 412, 620 A.2d 817, cert. granted, 225 Conn. 916, 625 A.2d 1026 (1993). We find that the charge given performed this function. Instead of giving the requested charge, the trial court instructed the jury pursuant to § 53a-19 (a) that the use

---

[4] Acquired Immune Deficiency Syndrome.

of deadly physical force is justified if the defendant reasonably believed that the victim was (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.[5]

The defendant's requested instruction on the use of deadly physical force in defense of robbery first defined robbery and larceny. It then stated: "Robbery, under our law, is a crime of violence. Under our self-defense statute and under the Common Law, the use of deadly physical force is justified when the defendant reasonably believes he is being robbed. I have defined robbery for you. The class of crimes in prevention of which a man may, if necessary, exercise his natural right to repel force by force to the taking of the life of the aggressor, are felonies which are committed by violence and surprise, and include robbery. Therefore, if you find from the evidence that a reasonable person in [the defendant's] position on July 30, 1991, in the [service station] would have felt that [the victim] was attempting to rob him, then you will find that the use of deadly physical force was justified and you will find the defendant not guilty."

"A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . . If omission of an instruction was improper, our review is limited to whether, as a result, there is a reasonable possibility that the jury was misled." (Citations omit-

[5] The trial court charged, in pertinent part, as follows: "A defendant claiming a justification of self defense is permitted to use deadly force only in two broad circumstances. He may justifiably use deadly force only when he reasonably believed that the other person was using or about to use deadly physical force, or two, inflicting or about to inflict great bodily harm. The law does not encourage the use of deadly force, and in most circumstances, a person must retreat from the perceived harm if he is able to do so with complete safety."

ted; internal quotation marks omitted.) *State* v. *Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990); see *State* v. *Havican,* supra. The trial court properly declined to instruct the jury in accordance with the defendant's request because it is an incorrect statement of the law.

A person is not permitted to use deadly physical force in self-defense just because that person reasonably believed that the victim was attempting to rob that person. General Statutes §§ 53a-19 and 53a-21.[6] General Statutes § 53a-21 explicitly states that deadly physical force, such as that used by the defendant, may be used only in defense of person as provided by § 53a-19. Therefore, the crux of the inquiry is not whether the defendant reasonably believed he was being robbed, but whether the defendant reasonably believed that the victim was using or about to use deadly physical force or was inflicting or about to inflict great bodily harm. General Statutes § 53a-19 (a). Because the requested instruction on the use of deadly physical force omitted reference to the criteria set out in § 53a-19, it would have essentially allowed the jury to acquit the defendant of the crimes charged merely on the basis of the perceived threat of robbery.[7] Because the defendant's request to charge was not an accurate statement of the law, we need not consider the defendant's remaining claims relating to it.

---

[6] General Statutes § 53a-21 provides: "A person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny or criminal mischief involving property, or when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force; but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19."

[7] The defendant's contention that another request to charge set out the criteria of General Statutes § 53a-19 does not mitigate the misleading nature of his requested charge on self-defense of robbery.

B

The defendant also claims that the trial court failed to cure properly its incorrect instruction that self-defense was inapplicable to the lesser included offenses of murder.

The defense of self-defense is applicable to the lesser included offenses of manslaughter in the first degree, General Statutes § 53a-55 (a) (1) and (3), manslaughter in the second degree, General Statutes § 53a-56, and criminally negligent homicide, General Statutes § 53a-58. *State* v. *Hall,* 213 Conn. 579, 584–86, 569 A.2d 534 (1990); *State* v. *Williams,* 25 Conn. App. 456, 467, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).

Prior to the charge on the law of self-defense, the court explained the elements of the crime of murder. After charging the jury on self-defense, the court defined the law on the lesser included offenses of murder.

The defendant took exception to the trial court's charge, contending that it did not clearly state that self-defense applies to the lesser included offenses. The court then called the jury back to the courtroom and charged in pertinent part: "So, if you find the murder, you'd stop right there. If you don't find the murder, and you don't find self-defense, you go to intentional manslaughter, then to reckless manslaughter if you don't find intentional manslaughter, then to reckless manslaughter in the second degree if you don't find it in the first degree, if you don't find second degree manslaughter, then you'll go on to criminally negligent homicide." The jury was excused, but later returned asking the court to "Clarify order of issues we need to deliberate. For example, intent to kill, self-defense, etcetera, then written description of law and charges."

In response to the court's inquiry as to what the question meant, the forewoman said, "I think what we mean is the—do you have to establish this intent to—to kill someone before you establish that it was self-defense?" A second juror said, "Your Honor, you gave us a sequence, I believe, for how we should proceed in our deliberations." The court repeated its earlier instructions and added, "So the only thing self-defense applies to is the question of murder—the issue of murder."

The next morning, the trial court corrected this instruction by telling the jury that "if you find self-defense in this case, then you cannot find Mr. Harrison guilty of anything." Later, in response to the jury's request for reinstruction on both subsections of manslaughter in the first degree, the court stated, "self-defense applies to manslaughter in the first degree, both subsections." After further deliberation, the jury requested an instruction on reckless manslaughter in the first degree, General Statutes § 53a-55 (a) (3), and the trial court read the charge but did not restate that self-defense applied to this offense. The defendant took exception to the court's failure to state explicitly that self-defense applies to the lesser included offense of reckless manslaughter in the first degree.

According to the defendant, these instructions were insufficient to cure the court's incorrect instructions because the trial court's curative instructions conflicted with the original instructions. The state agrees that the trial court's statements on the inapplicability of the defense of self-defense to the lesser included offenses were improper, but argues that the court's curative instructions removed from the minds of the jurors any misleading impression as to the applicability of self-defense to the lesser included offenses. We agree.

While it is true that " 'an instruction containing a misstatement of the law is more likely to be prejudi-

cial than an instruction that contains an omission or an incomplete statement of the law' "; *State* v. *Jennings,* supra, 664, quoting *State* v. *Preyer,* 198 Conn. 190, 198, 502 A.2d 858 (1985); an incorrect instruction to the jury may be cured by a later correct instruction that may be made when the jury is called back or returns for further instructions. *State* v. *Wright,* 169 Conn. 256, 262, 362 A.2d 983 (1975). We note again that when we review individual instructions we do not read each instruction in artificial isolation from the overall charge. *State* v. *Hall,* supra, 587.

The trial court's two curative instructions on the applicability of self-defense removed from the minds of the jury any confusion as to the applicability of self-defense to the lesser included offenses. The failure of the trial court to discuss self-defense in connection with the lesser included offenses of murder is harmless error where, as in the present case, the trial court states that if the defendant acted in self-defense, the jury must find the defendant not guilty. Id., 588; *State* v. *Williams,* supra, 467. We have found harmful error where the trial court failed to instruct the jury that self-defense applied to the lesser included offenses of intentional homicide and the jury returned a verdict of guilty on a lesser included offense on which the jury was not permitted to consider the defendant's self-defense claim. *State* v. *King,* 24 Conn. App. 586, 590–91, 590 A.2d 490, cert. denied, 219 Conn. 912, 573 A.2d 136 (1991). Here, the jury specifically requested reinstruction on both subsections and the jury convicted the defendant of reckless manslaughter in the first degree, General Statutes § 53a-55 (a) (3). The jury, therefore, convicted the defendant of a lesser included offense to which it had been explicitly instructed to apply the law of self-defense.

The defendant also asserts that the court's failure to instruct on self-defense in its reinstruction on man-

slaughter in the first degree was improper. We disagree because the court specifically stated that self-defense applies to manslaughter in the first and second degrees and the jury requested only the "description" of reckless manslaughter in the first degree, not self-defense.

## C

The defendant's next claim involving the charge on self-defense is that the trial court failed to instruct properly on the subjective perspective of the defendant in defining the degree of force available to a defendant claiming self-defense. Specifically, the defendant argues that the trial court improperly defined the degree of force available to a defendant asserting self-defense because the court, on three occasions, told the jury that "[r]easonable force is the amount of force that would be used by an average person of ordinary intelligence acting under the same circumstances." The defendant asserts that the trial court should have directed the jury to consider the amount of force that would be used by a terminally ill geriatric patient who had one half of the average person's normal lung capacity and who was being struck by a healthy young man.

"Our case law interpreting General Statutes § 53a-19 requires . . . that the test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. . . . [H]owever . . . the defendant's belief ultimately must be found to be reasonable. . . . The starting point of the jury's inquiry into whether reasonable force was used by a defendant is whether the defendant believed that deadly force was necessary to repel the attack. . . . Next the jury's inquiry should focus on the question of whether that belief was reasonable. . . . This statutory emphasis on the defendant . . . demonstrates the function of the jury in their evaluation of

the self-defense claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams,* supra, 464.

Reading the instruction as a whole, we find that in each instance, just before giving the challenged instruction the trial court clearly and properly reiterated the instruction on the subjective/objective test. The trial court stated that "[a] person is justified in using reasonable physical force upon another person to defend himself from *what he believes reasonably,* to be the imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for that purpose." (Emphasis added.) Additionally, the trial court emphasized that the jury must view the danger from the defendant's standpoint at the time of the attack. Finally, the trial court stated that in determining whether the amount of force used in this case was reasonable, the jury could consider "such factors such as the physical attributes of the parties involved including age, sex, height, weight . . . [and] the type of injuries inflicted by each party, if any, and the degree of severity of those injuries." The trial court sufficiently apprised the jury of the law relating to the test for the degree of force that may be used justifiably in self-defense.

D

In his final claim relating to the charge on self-defense, the defendant maintains that the trial court failed to instruct the jury sufficiently that the state, in disproving self-defense beyond a reasonable doubt, was required to prove that the defendant had actual knowledge of his ability to retreat in complete safety. Section 53a-19 (b) (1) states that a person is not justified in using deadly physical force if the person claiming the defense of justification knew that the necessity of using such force could be avoided with complete safety by retreating. The defendant challenges the trial court's initial charge that "in most circumstances, a

person must retreat from the perceived harm if he is able to do so with complete safety." This statement is the very charge our Supreme Court found to be improper because it replaced the subjective/objective standard set out in § 53a-19. *State* v. *Quintana,* 209 Conn. 34, 46, 547 A.2d 534 (1988).

Although the challenged instruction is improper, the jury was not misled since the court later cured this incorrect statement of the law on retreat. In its principal charge, the trial court stated that "a person is never justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating." Furthermore, when the defendant excepted to the challenged instruction, the court recalled the jury and reinstructed as follows: "With respect to retreat . . . the state has to prove that the person who is alleging self-defense could have retreated; secondly, he should know that he could retreat with safety. That goes back again to the subjective standard." The court sufficiently explained that the state carried the burden of proving the defendant had actual knowledge of his ability to retreat safely.

The defendant's claim that the court's supplementary instructions did not adequately inform the jury that the state carries the burden of proving that the defendant knew he could avoid the necessity of using such force by retreating is also without merit. The trial court repeatedly stated that the state bore the burden of disproving the defense of self-defense beyond a reasonable doubt.

## II

The defendant's final claim is that several improper evidentiary rulings had the cumulative effect of denying him his fundamental constitutional right to present a defense. He argues that the trial court improperly

(1) refused to admit into evidence the defendant's medical records from Danbury Hospital, (2) excluded testimony by the defendant of knowledge of his life expectancy, and (3) failed to admit evidence of specific acts of violence committed by the victim.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers* v. *Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). In exercising this right, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (Internal quotation marks omitted.) Id.; *State* v. *Kelly,* 208 Conn. 365, 375–76, 545 A.2d 1048 (1988); *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978). The fourteenth amendment to the United States constitution does not authorize a defendant to present every piece of evidence the defendant desires to present, although exclusionary rules of evidence cannot be applied "mechanistically" to deprive the defendant of his rights. *Chambers* v. *Mississippi,* supra; *State* v. *Kelly,* supra, 376. If, however, the evidence submitted is not relevant, the defendant's right to confrontation is not affected and the evidence should be excluded. *State* v. *Kelly,* supra; *In re Adalberto S.,* 27 Conn. App. 49, 57, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

The trial court has broad discretion in determining the relevancy of evidence. *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *State* v. *Sharpe,* 195 Conn. 651, 658–59, 491 A.2d 345 (1985). Its evidentiary rulings will be set aside only where there has been a clear abuse of discretion. *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990); *State* v. *Fritz,* supra, 167–68; *State* v. *Boucino,* supra; *In re Adalberto S.,*

supra, 57. "As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36 (1972); *State* v. *Mastropetre,* supra, 517; *State* v. *Cassidy,* 3 Conn. App. 374, 383, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985)." (Internal quotation marks omitted.) *State* v. *Kelly,* supra, 376; *State* v. *James L.,* 26 Conn. App. 81, 83, 598 A.2d 663 (1991).

The defendant contends that his medical history and his own knowledge of his life expectancy were relevant to substantiate his "state of mind" at the time of the shooting. The trial court found that the proffered evidence was irrelevant because the defendant failed to offer any testimony that his medical condition or the knowledge of his life expectancy had influenced his assessment of the need to use deadly physical force against the victim. We find no abuse of discretion by the trial court.

The defendant next asserts that the trial court improperly excluded evidence of the victim's specific acts of violence. The defendant claims that evidence of a number of unprovoked and mindless acts of violence committed by the victim on prior occasions established the victim's propensity for violence. He contends that the proffered evidence demonstrates that he was subject to an extreme level of aggression by the victim, justifying his use of a deadly weapon in self-defense.

A victim's violent character may be proven by reputation, testimony or opinion evidence, or by evidence of the deceased's convictions of crimes of violence. *State*

v. *Miranda,* 176 Conn. 107, 114, 405 A.2d 622 (1978). It may not, however, be proven by evidence of other specific acts. Id., 112–13; *State* v. *Weber,* 31 Conn. App. 58, 66, 623 A.2d 506 (1993); *State* v. *Maxwell,* 29 Conn. App. 704, 713–14, 618 A.2d 43, cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied,      U.S.     , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993); *State* v. *Webley,* 17 Conn. App. 200, 206, 551 A.2d 428 (1988). "Specific acts of violence, other than convictions, may not be introduced to show a victim's violent character because such evidence has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial. *State* v. *Miranda,* supra, 112 . . . . *State* v. *Smith,* 222 Conn. 1, 18, 608 A.2d 63, cert. denied,      U.S.     , 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992)." (Internal quotation marks omitted.) *State* v. *Weber,* supra, 67.

In an offer of proof, the defendant attempted to introduce the victim's youthful offender adjudications for assault in two separate incidents as records of convictions under *Miranda.* Pursuant to General Statutes § 54-76k, "no youth shall be denominated a criminal by reason of such determination [of youthful offender status], nor shall such determination be deemed a conviction." See, e.g., *State* v. *Keiser,* 196 Conn. 122, 128, 491 A.2d 382 (1985); see also *State* v. *Jones,* 205 Conn. 638, 668, 534 A.2d 1199 (1987) (youthful offender "treatment" is not a "crime" or "a criminal conviction" in Connecticut); *State* v. *Eric T.,* 8 Conn. App. 607, 615, 513 A.2d 1273 (1986) (adjudication as a youthful offender is a determination of status, rather than a conviction for the underlying offenses or charges). Accordingly, the trial court did not abuse its discretion in excluding these prior violent acts because they were not convictions. Further, the defendant's right to prove the victim's violent character was protected by the trial court's admission of the victim's prior conviction of

704

assault in the third degree, and by testimony from numerous witnesses that the victim had a reputation for violence.

Finally, the cumulative impact of these rulings did not deny the defendant his constitutional right to present a defense. See *State* v. *Anderson,* 28 Conn. App. 833, 849, 614 A.2d 438, rev'd on other grounds, 227 Conn. 518, 631 A.2d 1149 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.