STATE OF CONNECTICUT *v.* MARION LEE MILLER
(13073)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued September 28, 1994—decision released January 3, 1995

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals[1] from the judgment of conviction, after a jury trial, of murder in violation of General Statutes § 53a-54a,[2] felony murder in violation of General Statutes § 53a-54c[3] and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[4] The jury acquitted the defendant of reckless assault in violation of General Statutes § 53a-59 (a) (3).

The defendant claims that the trial court (1) improperly instructed the jury on the law of self-defense and

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] "[General Statutes] Sec. 53a-54a. MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[3] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime . . . he . . . causes the death of a person . . . ."

[4] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

(2) improperly sentenced the defendant on both intentional murder and felony murder. We reverse the judgment in part and remand the case for modification of sentence.

The jury could reasonably have found the following facts. On February 2, 1991, the victim, Joseph Licari, owned and operated Joe's Variety Shop on Whalley Avenue in New Haven. He was eighty years old, in poor health and walked with a cane. He usually worked alone, and a longtime friend, Nicholas Codianni, came to the store every evening to help him close.

At about 8 p.m. on February 2, 1991, the defendant entered the store and soon became involved in an argument over a lottery ticket. The defendant pulled what turned out to be a toy gun from his pocket and announced, "This is a stickup." While Codianni was attempting to knock what he believed to be a real gun from the defendant's hand, Licari took his own pistol from behind the counter and fired toward the defendant, missing him. The defendant and Licari then engaged in a struggle for Licari's gun. Codianni entered the fray, hitting the defendant on the head with a telephone. In the course of the struggle, the defendant and Codianni ended up in the shop's back room where the defendant shot and wounded Codianni. The defendant then returned to the front of the store where he fired the lethal shot at Licari. The defendant left the store after picking up a $50 bill that had fallen to the floor during the struggle.

I

Self-defense was the principal defense offered by the defendant. He contended that he was the victim of an unprovoked attack by Codianni.[5] The defendant makes

---

[5] The defendant also offered a defense of "accident," claiming that the gun discharged accidentally while he and Licari were struggling.

two challenges to the trial court's jury instruction on self-defense. First, that the instruction impermissibly replaced the subjective-objective test contemplated by the self-defense statute[6] with a purely objective standard, and, second, that the instruction concerning initial aggression was tantamount to a directed verdict of guilty.

## A

The state bears the burden of proving beyond a reasonable doubt that the defendant's actions were not justified as self-defense. *State* v. *Carter*, 34 Conn. App. 58, 66, 640 A.2d 610, cert. granted on other grounds,

---

[6] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

229 Conn. 916, 644 A.2d 915 (1994). The trial court read the relevant portion of the self-defense statute and then instructed the jury on the definitions of "reasonable" and "reasonable man."[7]

The standard for determining justification for the use of force is a subjective-objective one. "The statute focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact. This subsection also makes clear that such a person may not use 'deadly physical force' unless he *reasonably* believes that the other person is either 'using or is about to use deadly physical force' or is 'inflicting or about to inflict great bodily harm.' " (Emphasis in original.) *State* v. *Corchado*, 188 Conn. 653, 663, 453 A.2d 427 (1982). The jury must view the situation from the defendant's perspective. *State* v. *DeJesus*, 194 Conn. 376, 389 n.13,

---

[7] The relevant portion of the jury instruction follows: "It may be concluded from the statute that a man who is being assaulted or who reasonably believes that he is about to be assaulted may use force in such a degree as he reasonably believes is necessary for his defense. The moment he steps over the line and uses more force than he reasonably believes is necessary, then he becomes a wrongdoer and he becomes guilty of the crime himself. The test is not what force is actually necessary to protect himself from the use or imminent use of force, rather the test is what force did he, acting as a reasonable man, believe to be necessary under the circumstances.

\* \* \*

"Now, 'reasonably' means what an ordinary prudent man, a man of ordinary mental and physical capacity using his faculties in a normal manner might do or perceive in a given set of circumstances. A man of common sense acting in a common sense manner. A reasonable belief is a belief generated by the particular circumstances fairly created and honestly entertained. Now, in determining what the defendant reasonably believed, you should ask what would an ordinary prudent man, a man of ordinary mental and physical capacity, using his faculties in a normal manner, what might he do or perceive? That is, what would a man of common sense acting in a common sense manner do under the circumstances that you find that the defendant found himself in. The statute focuses on a person claiming self-defense, that is, what would a man in the position of Marion Miller reasonably believe under the circumstances. . . . You must view the situation from the perspective of the defendant and ultimately you must find that the defendant's belief was reasonable under the circumstances."

481 A.2d 1277 (1984). The starting point of a jury's inquiry into whether reasonable force was used by the defendant is whether the defendant believed that deadly force was necessary to repel the attack. The bottom line is that ultimately the defendant's belief must be found to be reasonable. Id., 390.

The defendant focuses on the portion of the instruction in which the trial court defined "reasonable" in terms of what "an ordinary prudent man" might perceive his situation to be. A correct instruction is what this particular defendant, as opposed to the hypothetical ordinary prudent man, believed his situation to be. The defendant, however, lifts the objective portion out of the instruction and views it in isolation. This excision skews the jury charge.

It is axiomatic that a jury charge is to be read as a whole and that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Suggs*, 209 Conn. 733, 755, 553 A.2d 1110 (1989); *State* v. *Washington*, 15 Conn. App. 704, 713, 546 A.2d 911 (1988). The test is whether the charge as a whole tended to mislead the jury. *State* v. *Quintana*, 209 Conn. 34, 44, 547 A.2d 534 (1988); *State* v. *Boone*, 15 Conn. App. 34, 55, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988).

When we view this instruction as a whole, it is apparent that the trial court correctly charged the jury on the subjective-objective standard. The defendant disregards the subjective portion of the charge and emphasizes the objective portion out of context. The court made it clear that "[t]he test is not what force is actually necessary to protect [the defendant] . . . rather the test is what force did he, acting as a reasonable man, believe to be necessary under the circumstances." Seven times before and after the objective instruction the court expressly told the jury that unless the defend-

ant reasonably believed that Licari or Codianni or both were about to inflict great harm on him he could not use deadly force in self-defense.

Considered as a whole, the jury charge adequately instructed the jury on self-defense in general, as well as the defendant's subjective belief as to the force Licari was using or was about to use in particular. The jury was informed that it must look at what the defendant himself believed. It was also told to consider whether the defendant's subjective belief that deadly physical force was necessary was ultimately reasonable, i.e., what a person of ordinary prudence and mental physical capacity in the defendant's position would believe. The defendant's belief was not left out of the equation. In directing the jury to consider what the defendant reasonably believed, the court stated the standard more than once in terms of the statute.

A proper self-defense instruction includes both subjective and objective aspects. In the present case, the trial court properly instructed the jury on both aspects.

B

The defendant next claims that the trial court's instruction on the "initial aggressor" aspect of self-defense constituted either a directed verdict of guilty or created a mandatory presumption.[8] During its deliberations, the jury sought clarification of the self-

---

[8] In its main charge on self-defense, the trial court stated: "[A] person is not justified in using physical force if he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justified if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force.

"Now, the defendant claims that he used no aggressive actions against either of the victims until forced to do so by the aggressive actions of both Nicholas Codianni and Joseph Licari under a reasonable belief that Joseph Licari would continue to use a pistol against him. He claims to have been the victim of an assault upon him by Mr. Codianni as he was leaving the

defense charge asking, "When a person is in the process of committing a robbery does he give up his claim to self-defense?" The court gave a supplemental charge. The short answer was "No, he does not give up his right to have [the jury] consider his claim of self-defense."

The court then reread the self-defense statute to the jury, noting that a person is not justified in using physical force when he is the initial aggressor. Addressing the issue of initial aggressor, the court said, "So, as it relates to your question, if you find that the defendant was in the process of committing a robbery, that is, attempting to commit a robbery, because the very nature of the act of robbery, that is, a stealing or attempted stealing by the use of force, you would necessarily have found that the defendant was the initial aggressor. . . . So, to recap, if you find proven beyond a reasonable doubt that the defendant was attempting to commit a robbery, he would be found to be the initial aggressor and his use of physical force would not have been justified unless he withdrew from the confrontation and effectively communicated his intent to do so to the other party and the other party notwith-

premises after arguing with Mr. Licari over a lottery play. He claims further to have been shot at by Mr. Licari and hit in the right hand by a bullet fired by Mr. Licari.

"The state claims, among other things, that by drawing a pistol, pointing it at Mr. Codianni and announcing that 'This is a stickup,' that that makes him the initiator and aggressor of the violent action that was directed at Mr. Codianni and Mr. Licari, and, as such, he was not entitled to use deadly force against either Mr. Licari or Mr. Codianni. While this defense is applicable to each crime charged and the lesser included crimes as it relates—and any lesser included crimes as it relates to the charge of felony murder, if you find beyond a reasonable doubt that the defendant did, in fact, intend to rob Joe's Variety Store, pointed a gun, albeit one determined to be a toy gun, and announce 'This is a stickup,' then you effectively would have found that he was the aggressor or initiator of the aggression, and the state would have proved beyond a reasonable doubt that he was not justified in his actions unless the evidence showed that he withdrew, or attempted to withdraw from the encounter, and effectively communicated such to the other parties of his intent to do so."

standing continued or threatened the use of physical force upon him."

"There is no question that '[t]he standard of review to be applied to a claim of an improper instruction on the elements of self-defense is whether it is reasonably possible that the jury was misled.' . . ." (Citations omitted.) *State* v. *Jimenez*, 30 Conn. App. 406, 411, 620 A.2d 817 (1993), rev'd on other grounds, 228 Conn. 335, 636 A.2d 782 (1994). "In evaluating the propriety of a supplemental charge, we must examine both the main and supplemental charge as a whole. *State* v. *Williams*, 199 Conn. 30, 41, 505 A.2d 699 (1986)." *State* v. *Hopkins*, 25 Conn. App. 565, 571, 595 A.2d 911, cert. denied, 220 Conn. 921, 597 A.2d 342 (1991).

The defendant argues that the supplemental instruction concerning initial aggression usurped the role of the jury as trier of fact by presenting it with what amounted to a directed verdict. The defendant notes that one can construct a scenario wherein one attempts robbery without being an initial aggressor.[9] Therefore, by telling the jury that someone attempting robbery is perforce the initial aggressor, the court had improperly taken that determination from the jury.

The defendant might have a point if he had been charged with attempted robbery, but he was not. Nor was the court instructing on the technical requirements of such a charge. Rather, the court was responding to the jury's question about whether one abrogates a self-defense claim when he is in the "process of committing a robbery."

At trial, the jury was presented with essentially only two versions of the event. It could have believed that

---

[9] For example, one could, with intent to rob, conceal a gun in one's pocket and enter a store. At this point one has met the elements of attempted robbery without being the initial aggressor for purposes of the self-defense statute.

the defendant was the victim of an unprovoked attack as he left Licari's store, or it could have believed that the defendant was attacked only after entering the store, brandishing what appeared to be a gun and telling Licari and Codianni that this was a holdup.

When the jury asked the court about the effect of being in the "process of committing a robbery" on a self-defense claim, it was obviously considering the latter scenario. In that context, "attempting" or "attempted" robbery refers not to the technical legal term "attempted robbery" and its appurtenant elements, but rather to the lay understanding of someone waving a gun around, clearly intent on taking money, but, as yet, not having actually finished the job.

Looking at the main and supplemental charges as a whole and in light of the factual issues raised at trial, the court neither directed the jury to reach a verdict nor created a mandatory presumption. The trial court focused the jury's attention on the parties' conflicting versions of the altercation, leaving the fact-finding and credibility determinations to the jury. The court merely informed the jury of the legal effect of crediting one of the alternative versions. "Indeed, the instructions comported with the requirement that an allusion to the evidence is necessary to furnish the jury with a practical guide as to how to apply the law to the evidence. *Shea* v. *Tousignant*, 172 Conn. 54, 60, 372 A.2d 151 (1976)." *State* v. *Storlazzi*, 191 Conn. 453, 467, 464 A.2d 829 (1983). The defendant cannot prevail on this claim because the charge was merely an instruction of law, leaving fact-finding to the jury.

## II

As a consequence of killing Licari, the defendant was convicted of both intentional murder and felony murder. The trial court sentenced the defendant to fifty years on each conviction with the sentences to run concurrently.

The state and the defendant agree that sentencing on "multiple convictions for a single homicide under the felony murder statute and any other homicide statute" constitutes double jeopardy. *State* v. *Chicano*, 216 Conn. 699, 710, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *John*, 210 Conn. 652, 696–97, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Couture*, 194 Conn. 530, 560, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

We must remand the case to the trial court with direction to combine the defendant's convictions for felony murder and intentional murder and to vacate one of the sentences. Combining these sentences will not change the total effective sentence of imprisonment. *State* v. *Chicano*, supra, 216 Conn. 721–25; accord *State* v. *Howard*, 221 Conn. 447, 462–63, 604 A.2d 1294 (1992).

The judgment is reversed in part and the case is remanded with direction to combine the defendant's murder conviction with his felony murder conviction and to vacate the sentence for one of those convictions. The judgment is otherwise affirmed.

In this opinion the other judges concurred.